TEICH GROH
By: Brian W. Hofmeister, Esq.
691 State Highway 33
Trenton, New Jersey 08619
(609) 890-1500
(609) 890-6961 Facsimile
bhofmeister@teichgroh.com
Attorneys for Capital One, National Association

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, et al.,<br><br>Reorganized Debtors.<br><br>THE NATIONAL LABOR RELATIONS BOARD AND THE NEW ENGLAND HEALTH CARE EMPLOYEES UNION, DISTRICT 1199, SEIU,<br><br>Appellants,<br><br>v.<br><br>710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, et al.,<br><br>Appellees. | CIV. ACTION NOS. 14-CV-01725(CCC),<br>14-CV-01726(CCC),<br>14-CV-02057 (CCC),<br>14-CV-02058 (CCC),<br>14-CV-02353(CCC),<br>14-CV-02354(CCC) |

### DECLARATION OF AKIM GRATE IN SUPPORT OF
### APPELLEES' MOTION TO DISMISS APPEALS AS EQUITABLY MOOT

I, AKIM J. GRATE, declare pursuant to 28 U.S.C. § 1746:

1. I am a Senior Vice President of Capital One, National Association ("Capital One"), with offices located at 4445 Willard Ave., 6th floor, Chevy Chase, MD 20815. I have served in that role since September 23, 2013, and in my previous role as a Portfolio Manager of Capital One since February 12,

2012. As described below, Capital One serves as lender to 710 Long Ridge Road Operating Company II, LLC d/b/a Long Ridge of Stamford, 240 Church Street Operating Company II, LLC d/b/a Newington Health Care Center, 1 Burr Road Operating Company II, LLC d/b/a Westport Health Care Center, 245 Orange Avenue Operating Company II, LLC d/b/a West River Health Care Center and 107 Osborne Street Operating Company II, LLC d/b/a Danbury Health Care Center (collectively, the "Appellees").

2. I make this declaration (the "Declaration") in support of the Appellees' motion to dismiss (the "Motion") the appeals (the "Appeals") filed by the National Labor Relations Board (the "NLRB") and the New England Health Care Employees Union, District 1199, SEIU (the "Union," and together with the NLRB shall be referred to herein collectively as, the "Appellants") of the Bankruptcy Court's March 6, 2014 Order [Bankr. Case No. 13 13653 (DHS), Docket No. 989] (the "Confirmation Order") confirming the Appellees' *First Amended Joint Chapter 11 Plan of Reorganization of 710 Long Ridge Road Operating Company II, LLC, et al.* dated December 10, 2013 [Bankr. Case No. 13 13653 (DHS), Docket No. 759] (as modified, the "Plan") as equitably moot.

3. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein. All matters set forth in this Declaration are based on my personal knowledge and review of relevant documents.

4. On February 24, 2013, each of the Appellees filed a petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court") commencing the above captioned bankruptcy cases (the "Chapter 11 Cases").

5. On April 9, 2013, this Court entered a *Final Order Authorizing Debtors to Obtain Post Petition Financing and Continued Use of the Prepetition Lenders' Cash Collateral* [Bankr. Case No. 13 13653 (DHS), Docket No. 234] (the "Final DIP Order"), which Final DIP Order authorized the Appellees' entry into a Debtor In Possession Credit Agreement (the "DIP Credit Agreement") by and between the

Appellees and Capital One, and approved the terms thereof.

6. On April 26, 2013, the Appellees entered into the DIP Credit Agreement, whereby Capital One agreed to provide financing to the Appellees consisting of revolving credit loans in an aggregate amount up to $5,000,000 (the "DIP Facility"). The purpose of the DIP Facility was for the Appellees to continue funding their operations, to minimize the disruption of the Appellees as "going concerns," to administer and preserve the value of the Appellees' estates, and to continue providing quality care to the Appellees' patients.

7. In or about October 2013, the Appellees approached Capital One about providing exit financing in connection with their Plan. The expected use of the proceeds from the exit financing was to: (a) satisfy the DIP Facility and certain other allowed claims under the Plan; (b) fund various emergence-related disbursements such as professional fees; and (c) provide for the working capital needs of the Appellees, as reorganized debtors.

8. On November 14, 2013, the Appellees filed that certain *Application in Support of Debtors' Motion for Order Authorizing Them to (I) Enter Into Letter Agreement in Connection with Anticipated Exit Financing and (II) Incur and Pay Related Fees and Expenses as Administrative Expenses* [Docket No. 609] (the "Exit Financing Motion"). The Exit Financing Motion contained, as Exhibit A thereto, a term sheet letter agreement, dated November 13, 2013, between the Appellees, as borrower, and Capital One, as exit lender, which outlined the terms of the exit financing. On December 5, 2013, the Bankruptcy Court entered an Order approving the Exit Financing Motion.

9. On March 7, 2014 (the "Effective Date"), the day after the Confirmation Order was entered, the Appellees (i) closed on a $5 million secured revolving credit facility (the "Exit Credit Facility") with Capital One, (ii) executed, among other things, the credit agreement (the "Exit Credit Agreement")[1], a true

---

[1] Capitalized terms used herein but otherwise defined shall have the meanings ascribed to such terms in the Exit Credit Agreement.

copy of which is attached hereto as Exhibit A, security agreement, revolving note, pledge agreement, intercreditor agreement, several deposit account control agreements, management fee subordination agreement and rent subordination agreement, all dated as of the Effective Date, and (iii) emerged from Chapter 11. That transaction was consummated in reliance on the Plan, the emergence of the Appellees from Chapter 11, and the finality of these Chapter 11 Cases. Indeed, each of the following, which were satisfied and upon which Capital One relied in advancing funds under the Exit Credit Facility, was a "Condition Precedent" to the Initial Loan (as defined in the Exit Credit Agreement):

    (a)    the Confirmation Order shall be in effect and consummation of the Reorganized Plan shall not have been reversed, modified, amended, vacated, enjoined or stayed (other than with the prior written consent of the Lender in its sole discretion);

    (b)    the Effective Date shall have occurred as set forth in the Confirmation Order;

Exit Credit Agreement § 3.2(a), (b).

    10.    Funds under the Exit Credit Facility were released to Appellees on the Effective Date and used to repay the Appellees' DIP Facility and, have since been advanced to the Apppellees to provide working capital going forward. After the Effective Date, the Appellees have drawn on the Exit Credit Facility on three (3) occasions. As of May 19, 2014, the principal amount outstanding under the Exit Credit Facility is $112,174.52.

    11.    Under Section 9.1(y) of the Exit Credit Agreement, titled "Bankruptcy," an event of default exists if the Appellees fail to comply with or fully consummate the Plan, or the Plan or Confirmation Order is revoked. If an event of default occurs under Section 9.1(y), Capital One will be entitled, pursuant to Section 9.2(a) of the Exit Credit Agreement, to exercise any and all rights and remedies available under the Exit Credit Agreement and other Loan Documents, applicable law (including, without limitation, the Uniform Commercial Code) or otherwise, including, but not limited to, terminating its commitment to make loans to the Appellees. A reversal of the Confirmation Order could adversely impact the Appellee's ability to continue to operate. For this reason, it is specifically listed as an Event of Default in the Exit

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 19, 2014

_____
AKIM J. GRATE