**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
Attorneys for 710 Long Ridge Road Operating
Company II, LLC, *et al.*, Appellees

| | |
|---|---|
| In re: | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY |
| 710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, *et al.*, | HONORABLE CLAIRE C. CECCHI CIV. ACTION NO. 14-CV-01725 (CCC) |
| Reorganized Debtors. | |
| THE NATIONAL LABOR RELATIONS BOARD AND THE NEW ENGLAND HEALTH CARE EMPLOYEES UNION, DISTRICT 1199, SEIU, | **SUPPLEMENTAL DECLARATION OF VICTOR MATTHEW MARCOS IN SUPPORT OF THE APPELLEES' MOTION TO DISMISS THE APPEALS AS EQUITABLY MOOT** |
| Appellants, | |
| v. | |
| 710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, *et al.*, | |
| Appellees. | |

51689/0001-10729599v1

I, VICTOR MATTHEW MARCOS, declare pursuant to 28 U.S.C. § 1746:

1. I am the Vice President of each of 710 Long Ridge Road Operating Company II, LLC d/b/a Long Ridge of Stamford, 240 Church Street Operating Company II, LLC d/b/a Newington Health Care Center, 1 Burr Road Operating Company II, LLC d/b/a Westport Health Care Center, 245 Orange Avenue Operating Company II, LLC d/b/a West River Health Care Center and 107 Osborne Street Operating Company II, LLC d/b/a Danbury Health Care Center (collectively, the "**Appellees**"), which are inpatient skilled nursing facilities all located in the state of Connecticut. I have served in that role since August 1, 2012.

2. I am also the Executive Vice President and Chief Financial Officer of Care Realty, LLC, Care One, LLC and Healthbridge Management, LLC (collectively, the "**Affiliates**"), non-debtor entities that are related to the Appellees. The Affiliates contributed substantial funds and made material accommodations in order for the Appellees to confirm their *First Amended Joint Chapter 11 Plan of Reorganization of 710 Long Ridge Road Operating Company II, LLC, et al.* dated December 10, 2013 [Bankr. Case No. 13-13653 (DHS), Docket No. 759] (as modified, the "**Plan**"). I have served in that role also since August 1, 2012.

3. I am familiar with the Appellees' business and financial affairs and the Appellees' day-to-day operations, and am duly authorized to make this supplemental declaration (the "**Supplemental Marcos Declaration**") on the

Appellees' behalf.  If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein.

4. I make this Supplemental Marcos Declaration in support of the Appellees' reply brief in response to the objections [Docket Nos. 49 and 50] filed by the National Labor Relations Board (the "**NLRB**") and the New England Health Care Employees Union, District 1199, SEIU (the "**Union**," and together with the NLRB shall be referred to herein collectively as, the "**Appellants**") to the Appellees' motion to dismiss [Docket No. 19] the above-captioned appeals filed by the Appellants of seven (7) orders entered by the United States Bankruptcy Court for the District of New Jersey as equitably moot.  I previously submitted a declaration in support of the Motion [Docket No. 20] (the "**Original Marcos Declaration**").[1]  This declaration is meant to supplement the Original Marcos Declaration and advise the Court of additional facts and transactions that occurred since the May 19, 2014 filing of the Original Marcos Declaration.

5. All matters set forth in this Supplemental Marcos Declaration are based on (a) my personal knowledge, (b) my review of relevant documents, including the Plan, (c) my opinion, based on my personal experience and

---

[1] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Original Marcos Declaration.

3

knowledge of the Appellees' business and financial condition, or (d) as to matters involving the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, my reliance on the advice of the Appellees' bankruptcy counsel.

6.  Since the filing of the Original Marcos Declaration, the Appellees have issued additional payments in connection with the Plan including:

    (a)  One additional monthly distribution to 136 holders of Allowed Ongoing Trade Vendor Claims in Class 5 in the amount of $408,000.  Accordingly, since the Effective Date, the Appellees have paid the first four monthly distributions to holders of Allowed Ongoing Trade Vendor Claims in Class 5 totaling approximately $893,000.

    (b)  Another $600,000 in payments to professionals pursuant to approved final fee applications.  Accordingly, since the Effective Date, the Appellees have paid approximately $2,195,000 in payments to professionals pursuant to approved final fee applications.

7.  Moreover, pursuant to the Plan, as of the date hereof, the Debtors have executed 136 Ongoing Trade Vendor Agreements with the Ongoing Trade Vendors.  Each of these third-party Ongoing Trade Vendors has extended the "Extended Terms" and "Credit" to the Appellees in reliance on and pursuant to the Plan.

8.  Further, pursuant to Section 4.2 of the Plan, Care Realty, LLC was required to contribute an additional $308,000 to cover operating shortfalls in May 2014.  As such, since the Effective Date, Care Realty, LLC has contributed $1,536,000 to cover operating shortfalls in March, April and May 2014.

9. Given the significant operating shortfalls in March, April and May 2014, as aforesaid, and the delay in receiving Medicare/Medicaid reimbursement from the State of Connecticut, the Appellees were forced to draw on the Credit Facility to meet their payroll obligations on March 19, 2014, April 2, 2014, April 30, 2014 and May 6, 2014. Without the availability under the Credit Facility, the Appellees would not have been able to meet those obligations.

10. In addition, as set forth in the Original Marcos Declaration, on the Effective Date, the Appellees entered into new management agreements with Care Group, L.L.C., a wholly-owned subsidiary of Care Realty, LLC. Under the management agreements, the Appellees are obligated to pay a 5% management fee to Care Group, L.L.C. The Appellees made their: (i) first payment in the amount of $237,182 (for the period March 7, 2014 through and including March 31, 2014) on April 1, 2014; (ii) second payment in the amount of $280,517 on May 1, 2014; and (iii) third payment in the amount of $292,619 on June 1, 2014.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: June 30, 2014

_____
VICTOR MATTHEW MARCOS