**COLE SCHOTZ P.C.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Michael D. Sirota, Esq.
Attorneys for 710 Long Ridge Road Operating
Company II, LLC, *et al.*, Appellees

| | |
|---|---|
| In re:<br><br>710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, *et al.*,<br><br>      Reorganized Debtors.<br><br>THE NATIONAL LABOR RELATIONS BOARD AND THE NEW ENGLAND HEALTH CARE EMPLOYEES UNION, DISTRICT 1199, SEIU,<br><br>      Appellants,<br><br>v.<br><br>710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, *et al.*,<br><br>      Appellees. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY HONORABLE CLAIRE C. CECCHI CIV. ACTION NO. 14-CV-01725 (CCC)<br><br>**SECOND SUPPLEMENTAL DECLARATION OF VICTOR MATTHEW MARCOS IN SUPPORT OF THE APPELLEES' MOTION TO DISMISS THE APPEALS AS EQUITABLY MOOT** |

I, VICTOR MATTHEW MARCOS, declare pursuant to 28 U.S.C. § 1746:

1. I am the Chief Financial Officer of Traditions Senior Management, Inc. ("**Traditions**"), a for-profit company that manages 25 nursing homes around the country. I have served in that role since December 3, 2015.

2. Between August 1, 2012 and November 11, 2015, I served as the Vice President of each of 710 Long Ridge Road Operating Company II, LLC (formerly operated as Long Ridge of Stamford), 240 Church Street Operating Company II, LLC (formerly operated as Newington Health Care Center), 1 Burr Road Operating Company II, LLC (formerly operated as Westport Health Care Center), 245 Orange Avenue Operating Company II, LLC (formerly operated as West River Health Care Center) and 107 Osborne Street Operating Company II, LLC (formerly operated as Danbury Health Care Center) (collectively, the "**Appellees**"), which, prior to January 1, 2015, operated inpatient skilled nursing facilities located in Connecticut.

3. Between August 1, 2012 and November 11, 2015, I served as Executive Vice President and Chief Financial Officer of Care Realty, LLC ("**Care Realty**") and Care One, LLC ("**Care One**," and together with Care Realty shall be referred to herein as, the "**Affiliates**"), non-debtor entities that are related to the Appellees. As reflected in my prior declarations, the Affiliates contributed substantial funds and made material accommodations in order for the Appellees to

2

confirm their *First Amended Joint Chapter 11 Plan of Reorganization of 710 Long Ridge Road Operating Company II, LLC, et al.* dated December 10, 2013 [Bankr. Case No. 13-13653 (DHS), Docket No. 759] (as modified, the "**Plan**").

4. As a result of my previous employment by the Appellees and the Affiliates, I am familiar with their business and financial affairs and the day-to-day operations, and am able to make this supplemental declaration (the "**Second Supplemental Marcos Declaration**") on the Appellees' behalf. If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein.

5. I make this Second Supplemental Marcos Declaration in further support of the Appellees' motion to dismiss [Docket No. 19] the above-captioned appeals filed by the Appellants of seven (7) Orders entered by the United States Bankruptcy Court for the District of New Jersey as equitably moot. I previously submitted (a) a declaration in support of the Motion [Docket No. 20] (the "**Original Marcos Declaration**"),[1] and (b) a Supplemental Marcos Declaration [Docket No. 58] (the "**Supplemental Marcos Declaration**") in connection with the Appellees' reply. This Second Supplemental Marcos Declaration is meant to

---

[1] All capitalized terms used but not otherwise defined herein shall have the same meanings ascribed to them in the Original Marcos Declaration.

3

supplement the Original Marcos Declaration and the Supplemental Marcos Declaration and to advise the Court of additional facts and transactions that occurred since the June 30, 2014 filing of the Supplemental Marcos Declaration.

6. All matters set forth in this Second Supplemental Marcos Declaration are based on (a) my personal knowledge, (b) my review of relevant documents, including the Plan, (c) my opinion, based on my personal experience and knowledge of the Appellees' business and financial condition, or (d) as to matters involving the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, my reliance on the advice of the Appellees' bankruptcy counsel.

A. **The Appellees Cease Operations and Turn Over Operations of the Facilities to a Third Party Operator**

7. On March 7, 2014, the Appellees consummated and implemented, or commenced consummating and implementing, the various transactions contemplated in the Plan, and that date was the effective date of the Plan (the "**Effective Date**"). Between the Effective Date and December 31, 2014 (the "**Relevant Period**"), the Appellees operated the five (5) sub-acute and long-term nursing care facilities for the elderly in Connecticut (the "**Facilities**") pursuant to leases with 240 Church Street, LLC, 1 Burr Road Company LLC, 245 Orange Avenue, LLC, 107 Osborne Street, LLC and 710 Long Ridge Road, LLC (collectively, the "**Landlords**"). As of January 1, 2015, the Appellees ceased operating the Facilities.

8. On December 31, 2014, the Appellees, the Landlords, and Affiliate Care Realty entered into a facilities agreement (the "**Facilities Agreement**") with, among others, Eagle Lake Foundation, Inc. ("**Eagle Lake**"), an experienced provider of health care services to patients and residents of healthcare facilities, to manage and operate the Facilities. In furtherance of the Facilities Agreement, Eagle Lake formed five (5) subsidiaries to provide services at the Facilities, which are: Senior Philanthropy of Newington, LLC; Senior Philanthropy of Milford, LLC; Senior Philanthropy of Danbury, LLC; Senior Philanthropy of Stamford, LLC; Senior Philanthropy of Westport, LLC (collectively, the "**New Operators**").

9. In accordance with the Facilities Agreement, from and after January 1, 2015, the New Operators, together with Traditions as manager, oversaw the management of the operations of the Facilities, pending necessary governmental and regulatory approval for the New Operators to become the operators of the Facilities. Once that approval was obtained, depending upon the Facility, the New Operators either entered into a new lease with the applicable Landlord, or the Appellees assigned and transferred the existing lease to the New Operator, effective April 1, 2015. The New Operators retained Traditions (my current employer) to manage the Facilities. The New Operators and Traditions continue to operate the Facilities today.

10. Neither Eagle Lake, the New Operators nor Traditions are affiliated with the Appellees, the Landlords, or the Affiliates.

11. I am informed that Eagle Lake and Traditions would not have entered into the Facilities Agreement, nor consummated, the transactions contemplated thereby, without the relief that the Appellees obtained in the Bankruptcy Court, including the relief granted under Section 1113 of the Bankruptcy Code, as implemented by the Plan, and the Appellees having emerged from Chapter 11.

12. Pursuant to the Facilities Agreement, and as a result of having the New Operators taking over as operators of the Facilities, Eagle Lake made capital expenditures at the Facilities in an amount no less than $3,150,000.00.

**B.  The New Operators Enter into a Collective Bargaining Agreement with the Union**

13. On July 1, 2015, the New Operators entered into a collective bargaining agreement with the Union (the "**New Operators CBA**"). The New Operators CBA has terms and conditions which in certain respects are more favorable than the conditions that were implemented pursuant to the 1113 Orders.

## C. Actions Taken in Furtherance of the Restructuring Transaction During the Relevant Period

14. In addition to the actions described in the Original Marcos Declaration and the Supplemental Marcos Declaration in furtherance of the restructuring transactions contemplated by the Plan, during the Relevant Period, the Appellees:

   (a) Entered into approximately 152 Ongoing Trade Vendor Agreements with the Ongoing Trade Vendors.[2]

   (b) Completed the distributions to holders of Allowed Ongoing Trade Vendor Claims in Class 5, with payments totaling no less than $2,434,669.41.

   (c) Paid $1,595,000.00 in payments to professionals pursuant to approved final fee applications.

   (d) Paid $543,000.00 to counsel for M&T Bank ("**M&T**") and Housing & Healthcare Finance LLC insured by the U.S. Department of Housing and Urban Development Federal Housing Administration ("**HUD**") pursuant to the Appellees' pre-petition financing agreements with M&T and HUD.

   (e) Paid off the pre-petition loan with M&T on December 17, 2014 in the amount of $15,918,447.85.

   (f) Incurred borrowing costs of no less than $78,120.00 associated with the $5 million secured revolving credit facility with Capital One, N.A., as exit lender, and on April 16, 2015, paid off the credit facility in full.

---

[2] Depending upon the vendor, the Appellees either entered into an Ongoing Trade Vendor Agreement applicable to multiple facilities, or entered into separate Ongoing Trade Vendor Agreements per facility. As such, the 152 Ongoing Trade Vendor Agreements is an approximate figure, but covered most, if not all, of the Class 5 claimants.

    (g)    Paid management fees to a new management company, Care Group, L.L.C., in the amount of $2,792,245.99.

### D. Prior to the Appellees' Cessation of Operations, Care Realty Advances Funds to Cover Operating Losses

15. Pursuant to Section 4.2 of the Plan, for so long as each Appellee shall continue to own and operate a facility, Care Realty agreed to make such funds available to the applicable Appellee to meet operating shortfalls. During the Relevant Period, Care Realty provided to the Appellees more than $3,100,000 to meet operating shortfalls. In addition, Care Realty funded millions of dollars in professional fees allocable to the Appellees during the Relevant Period.

51689/0001-11845881v3

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated:  June 21, 2016

VICTOR MATTHEW MARCOS

51689/0001-11845881v3