# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, *et al.*,<br><br>Reorganized Debtors. | Case No. 13-13653 (DHS)<br><br>Chapter 11<br><br>*Bankruptcy Appeal* |
| THE NATIONAL LABOR RELATIONS BOARD AND THE NEW ENGLAND HEALTH CARE EMPLOYEES UNION, DISTRICT 1199, SEIU,<br><br>Appellants,<br><br>v.<br><br>710 LONG RIDGE ROAD OPERATING COMPANY II, LLC, *et al.*,<br><br>Appellees. | Civil Action Nos. 14-CV-01725 (JXN)(LDW)<br>14-CV-01726 (JXN)<br>14-CV-02057 (JXN)<br>14-CV-02058 (JXN)<br>14-CV-02353 (JXN)<br>14-CV-02354 (JXN)<br><br>**OPINION** |

**NEALS**, District Judge

**THIS MATTER** comes before the Court on Appellees 710 Long Ridge Road Operating Company II, LLC d/b/a Long Ridge of Stamford, 240 Church Street Operating Company II, LLC d/b/a Newington Health Care Center, 1 Burr Road Operating Company II, LLC d/b/a Westport Health Care Center, 245 Orange Avenue Operating Company II, LLC d/b/a West River Health Care Center and 107 Osborne Street Operating Company II, LLC d/b/a Danbury Health Care Center's (collectively, the "Appellees" or "Debtors") motion for preliminary injunctive relief (1) restraining and enjoining Appellant, the National Labor Relations Board ("NLRB" or "Appellant"), from investigating, pursuing, or otherwise prosecuting certain claims pending final disposition in this matter and the underlying appeals and (2) for sanctions, attorneys' fees and

costs; (ECF No. 128), which Appellants oppose (ECF No. 131), to which Appellees replied (ECF No. 133).   This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).   For the reasons stated herein, Appellees' motion for preliminary injunctive relief and for sanctions as to Appellants is **GRANTED in part** and **DENIED in part**.

## I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY[1]

To provide sufficient context for Appellees' motion, it is necessary to summarize the somewhat complex facts and issues involved in the underlying bankruptcy appeals and subsequent procedural history.[2]   Each Appellee formerly operated an inpatient skilled nursing facility located in the state of Connecticut. *See Declaration of Victor Matthew Marcos in Support of Appellees' Motion to Dismiss the Appeals as Equitably Moot,*ECF No. 128-3, "Marcos Declaration", ¶ 1. Due to unsustainable labor costs under collective bargaining agreements ("CBAs") covering their unionized workforce, the Appellees sought Chapter 11 relief in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").[3] *See id.* ¶ 7. Following the Petition Date, Appellees moved in the Bankruptcy Court to implement interim modifications to their CBAs with Appellant New England Health Care Employees Union, District 1199, SEIU ("Union") and, with NLRB, ("Appellants") under Section 1113(e) of Title 11 of the United States Code (the "Bankruptcy Code") because Appellees' facilities were unable to sustain themselves given the existence of uneconomic provisions in the CBAs. ECF No. 128-18 at 8-9.

---

[1] For sake of clarity, the Court cites to the page number listed in the ECF header when referencing documents by "ECF No."

[2] A detailed recitation of the facts and procedural history can be found at *In re 710 Long Ridge Rd. Op. Co. II, LLC,* 2014 WL 886433, at *1-10 (Bankr. D.N.J. March 5, 2014), *also* ECF No. 128-4, Ex. 3 to the Sirota Declaration.

[3] The Petition was filed on February 24, 2013, (the "Petition Date").

On March 4, 2013, April 10, 2013, July 15, 2013, and November 22, 2013, the Bankruptcy Court entered four successive Orders under Section 1113(e) (the "1113(e) Orders") authorizing the Appellees to implement interim modifications to their CBAs with the Union. *See* Case No. 13-13653 (DHS), ECF Nos. 66, 230, 424, 706; *see also* Marcos Declaration, ¶ 4.

After unproductive Union negotiations, Appellees moved to reject the economic terms of the CBAs and implement the Appellees' proposal under Section 1113(b) of the Bankruptcy Code to emerge from Chapter 11. On February 3, 2014, the Bankruptcy Court issued an opinion and an Order under Section 1113(c) (the "1113(c) Order," with the 1113(e) Orders, collectively the "1113 Orders") (i) rejecting the continuing economic terms of the CBAs with the Union under 11 U.S.C. § 1113(c), and (ii) implementing the terms of Appellees' proposal under 11 U.S.C. § 1113(b). *See* Case No. 13-13653, ECF Nos. 897, 898; *see also* Marcos Declaration, ¶ 4. On February 6, 2014, the Bankruptcy Court entered an Order approving the Appellees' objection to various claims (the "Claims Objection Order"),  which (i) reclassified as general unsecured claims, if and when awarded in a NLRB proceeding and to the extent that they were filed or asserted as priority claims under 11 U.S.C. § 507(a)(4) and/or 11 U.S.C. § 507(a)(5), the claims of the Appellants that relate to the period preceding the Petition Date, and (ii) expunged the claims attributable to the time period of March 3, 2013 to February 3, 2014. *See* Civil Action Nos. 14-cv-02057 and 14-cv-02058; *see also* Marcos Declaration, ¶ 4.

The 1113 Orders and Claims Objection Order enabled the Appellees to proceed with the hearings on confirmation of the Plan and emerge from Chapter 11. The Bankruptcy Court conducted hearings on February 10, 2014, and February 19, 2014, on confirmation of the Plan. On March 5, 2014, the Bankruptcy Court issued an opinion confirming the Plan provided the Appellees made certain modifications thereto. *See In re 710 Long Ridge Rd. Op. Co. II, LLC,*

2014 WL 886433 (Bankr. D.N.J. March 5, 2014) (the "Opinion on Confirmation," *see* ECF No.

128-4, Ex. 3 to the Sirota Declaration).[4] The Bankruptcy Court found that,

> The Objecting Parties assert it is beyond this Court's jurisdiction to resolve NLRB
> claims against non-debtors because "preventing claimants from pursuing their
> claims is equivalent to issuing a final adjudication of the merits of such
> claims." *See In re Digital Impact,* 223 B.R. 1, 12 (Bankr. N.D. Okla. 1998).
>
> While the Plan in its original form may have been read to enjoin the NLRB's
> rights to fix a claim against any Releasee in the ALJ proceedings, the Debtors'
> second modifications to the Plan clarify that the Third–Party Releases are not
> meant to function in this manner. The Debtors' Plan states that
>
>> [s]ubject to all provisions of this Article IX, including the releases,
>> neither Section 9.4 of the Plan nor any Confirmation Order shall
>> operate as an injunction with respect to, or otherwise limit or
>> enjoin, the NLRB's rights under the NLRA and any exclusive
>> jurisdiction thereunder to fix a claim against any Releasee in the
>> ALJ Proceedings. (Footnote omitted).
>
> Thus, this portion of the Objecting Parties' argument appears resolved except to
> the extent third-party releases are permitted which would affect the NLRB's claim
> of joint and several liability against non-debtors.

710 Long Ridge *Rd.*, 2014 WL 886433, at *11.

In further support of its ruling, the Bankruptcy Court stated, "Whether third-party

releases are permissible plan provisions is governed by substantive bankruptcy law and is often

litigated. Referring to third-party releases, the Bankruptcy Court for the District of New Jersey

has noted that 'such injunctions and releases are customary and ordinary in large Chapter 11

cases.'" *Id.* at *12 (citing *In re Am. Family Enters.,* 256 B.R. 377, 406 (D.N.J. 2000)).[5]

---

[4] The "Objecting Parties" are the Appellants in the instant matter. The "Debtors" refer to Appellees. The NLRB and other parties objected to the Confirmation Order arguing that the Bankruptcy Court does not have subject matter jurisdiction to approve the Plan's Third–Party Releases because the NLRB has exclusive jurisdiction to determine a party's liability under the NLRA. *710* Long Ridge *Rd.*, 2014 WL 886433, at *11.

[5] In *In re Am. Family Enters.*, the district court approved a release which provided for a permanent injunction against the pursuit of any creditor's claims against funding parties and other released third parties. 256 B.R. at 407; *see also In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 141 (2d Cir.2005) ("We have previously held that '[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an

4

Here, the Bankruptcy Court further added that, "in order to preserve the viability of the Debtors, third parties are contributing significant dollars to fund the potential for a Back Pay Claim award. These funds will be available to satisfy such a claim against the Debtors without the NLRB ever having to prove its case that any of the third parties is liable as a single and/or joint employer." 710 Long Ridge *Rd.*, 2014 WL 886433, at *13. The Bankruptcy Court explained that,

> There is no question that there is an identity of interest between the Debtors and Care One and Care Realty. Care One and Care Realty undoubtedly "share the common goal" of confirming the Amended Plan and implementing the transactions contemplated thereunder. *See In re Tribune Co.,* 464 B.R. 126, 187, *on reconsideration,* 464 B.R. 208 (Bankr. D.Del. 2011) (noting an identity of interest between the debtors and the settling parties where such parties "share[d] the common goal of confirming the [ ] Plan and implementing the [ ] Plan Settlement"). The Debtors also share a unity of identity with the other Releasees because their claims may be of such a nature that they are indemnifiable by the Debtors and therefore would implicate the Debtors and further deplete estate assets. The Objecting Parties acknowledge that actions against the non-debtor affiliates are consolidated with those against the Debtor and arise out of the same alleged conduct.

710 Long Ridge *Rd.*, 2014 WL 886433, at *15.

The Bankruptcy Court similarly found that as to other Releasees, "There is also a direct relationship between the Debtors' reorganization and the nonconsensual releases given in consideration for the contributions by HealthBridge and the Affiliated Landlords. Much of the same reasoning applicable to Care Realty and Care One applies to the management company and the landlords." *710 Long Ridge Rd.,* 2014 WL 886433, at *16.

Appellees agreed to the modifications and on March 6, 2014, and the Bankruptcy Court entered an Order confirming the Plan (the "Confirmation Order"); *see also* Marcos Declaration, ¶ 8. On March 7, 2014, the Plan became effective (the "Effective Date") and shortly thereafter,

---

important part in the debtor's reorganization plan.'") (citing *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 293 (2d Cir.1992)).

was substantially consummated. The Union and the NLRB have appealed the 1113 Orders, Claims Objection Order and Confirmation Order to this Court (collectively, the "Appeals").

Subsequent to entry of the Confirmation Order and the Effective Date of the Plan, the NLRB issued at least nine subpoenas (the "Subpoenas") seeking testimony from current and former representatives of the Releasees, including Care Realty, as well as several subpoenas to banks and financial institutions for the production of the Releasees' bank records, financial statements, income tax returns, and other financial information. The Subpoenas sought information and documents in connection with the NLRB's litigation of its joint and single employer claims with respect to the Releasees. The Appellees opposed the issuance of the Subpoenas contending it was an effort to end-run the very relief granted to the Releasees in the Confirmation Order.[6]

In response, on March 31, 2014, the NLRB filed a motion to clarify the Confirmation Order in the Bankruptcy Court (the "Clarification Motion"). *See* Ex. 4 to the Sirota Declaration, ECF No. 128-5.

On April 24, 2014, the Bankruptcy Court issued an Opinion on the Clarification Motion. *In re 710 Long Ridge Rd. Op. Co. II, LLC*, No. 13-13653 (DHS), 2014 WL 1648725 (Bankr. D.N.J. April 24, 2014) (the "Clarification Opinion," *see* Ex. 6 to the Sirota Declaration, ECF No. 128-7).[7] In the Clarification Opinion, the Bankruptcy Court stated,

---

[6] The NLRB reissued a Subpoena to PNC Bank on August 7, 2020. After non-compliance, the NLRB thereafter filed an Application to Enforce the PNC Bank Subpoena in the United States District Court for the District of Connecticut. The Application to Enforce the PNC Bank Subpoena was transferred to this Court on October 29, 2021 and remains pending. *See* Civil Case No. 21-cv-19436(JXN) (ESK).

[7] The Bankruptcy Court found that, "The Motion states that it requests this clarification in order to address a latent ambiguity in the Order which it now contends has become patent, mainly, the effect of the Confirmation Order's third-party release on the NLRB's case against Care One Realty, LLC, Care One LLC, and Healthbridge Management, LLC (collectively the "Affiliates"). The NLRB requests that the Court clarify its previous Confirmation Order to confirm that it does not limit the NLRB's jurisdiction to find the Affiliates to be joint or single employees with the Debtors and to order prospective injunctive relief against the Affiliates in the unfair labor

In response to the subpoenas, counsel for the Affiliates sent a letter to the NLRB advising the NLRB that it is enjoined from issuing the subpoenas under the Confirmation Order and Plan, and, absent withdrawal of the same, the Affiliates intended to move for contempt of the Confirmation Order before this Court. (*See* Decl. of Paul S. Hollander in Supp. of Joint Resp. ¶ 3, Ex. A). The NLRB acknowledges that it filed the within Motion thereafter arguing ambiguity in the Order. (Footnote omitted) The NLRB's concern with a latent ambiguity in the Order belies what actually occurred with respect to that Order. A form of order was filed prior to the commencement of the two-day confirmation hearing and no objection was ever raised to the form of order by the NLRB. After this Court's Opinion, the Debtors were directed to prepare a proposed amended form of order, consistent with the Opinion requiring the removal of certain individuals from the parties' granted releases and an injunction under the Confirmation Plan, and again no objection to the provisions of the Confirmation Order, now claimed to be ambiguous, were raised by the NLRB or Union prior to its entry.

Clarification Opinion, 2014 WL 1648725, at *2.

The Bankruptcy Court specifically found that,

The NLRB's predicate for the relief requested on the Motion, Rule 9024 of the Federal Rules of Bankruptcy Procedure, which incorporates by reference Rule 60(a) of the Rules of Civil Procedure, does not support a clarification of an order (the Rule actually refers to corrections for clerical mistakes, oversights, and admissions) and specifically does not permit changes of any kind in an order if an appeal has been docketed and while it is pending without specific leave of the appellate court. Fed. R. Civ. P. 60(a); *see, e.g., Hartis v. Chicago Title Ins. Co.,* 694 F.3d 935, 949–50 (8th Cir. 2012).

*Id.* at *3.

The Bankruptcy Court declined to address the Clarification Motion finding that it did not have jurisdiction to hear the matter given the pending appeal of the Confirmation Order.[8] As enunciated by the Bankruptcy Court, the general rule provides that the filing of a notice of appeal

---

practice proceedings. (NLRB's Mem. of Law 2). Simply stated, the NLRB requests that the Order be 'clarified' to indicate that nothing in the Plan or the Court's Confirmation Order shall operate to prevent the NLRB from continuing its administrative case against the Affiliates in order to find them to be a single integrated enterprise and/or joint employer with the Debtors, nor shall the Confirmation Order operate to prevent the NLRB from obtaining prospective injunctive relief. (*See* NLRB's Mem. of Law 6)." Clarification Opinion, 2014 WL 1648725, at *1.

[8] *See* Clarification Opinion, 2014 WL 1648725, at *5.

immediately divests a trial court of its control over those aspects of the case involved in the appeal and confers jurisdiction on the appellate court.[9]

In the context of the pending appeals, the Bankruptcy Judge commented that,

> Moreover, even if this Court were to conclude "clarification" is necessary, the clarification requested addresses the non-debtor releases given to the Affiliates under the Plan and Confirmation Order which is in very large measure a critical issue on appeal to the district court. *Thus, the requested "clarification" deals directly with the breadth and scope of the injunction and release provisions in the Plan which are subject to attack by the NLRB and Union in their appeal. Attempts to relitigate issues while they are on appeal are not appropriate.*

Clarification Opinion, 2014 WL 1648725, at *3. (Emphasis added.)

The Bankruptcy Court found it "difficult to understand the NLRB's confusion regarding the scope of the releases in question when [...] there was no meaningful discussion concerning an exception, carve-out, or limitation to the releases being proposed for the Affiliates and the Individuals under the Plan." *See* Clarification Opinion, 2014 WL 1648725, at *2 n.4.[10] The Court added that "the NLRB and Union opposed the third-party releases in the Plan and that issue is on

---

[9] *See* Clarification Opinion, 2014 WL 1648725, at *3. *See also Griggs v. Provident Consumer Disc. Co.,* 459 U.S. 56, 58 (1982); *Venen v. Sweet,* 758 F.2d 117, 120 (3d Cir.1985); *United States v. Leppo,* 634 F.2d 101, 104 (3d Cir.1980) (there is a general rule in the Third Circuit that "the trial court is divested of jurisdiction over a case when a notice of appeal is filed"); *In re Sacred Heart Hosp. of Norristown,* 204 B.R. 132, 142–43 (E.D.Pa.1997) *aff'd,* 133 F.3d 237 (3d Cir.1998) ("Normally, once a party files a proper notice of appeal, a lower court is automatically divested of jurisdiction over the lawsuit"). The function of the divestiture rule is "to prevent interference from the lower court while the appeal is pending and to conserve judicial resources by having only one court at a time review issues." *Sacred Heart Hosp.,* 204 B.R. at 143; *see also Whispering Pines,* 369 B.R. 752, 759 (B.A.P. 1st Cir.2007) ("[O]nce an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process."). Thus, a court cannot take action that will alter or modify its prior order while that order is pending on appeal. *See In re G–I Holdings, Inc.,* 472 B.R. 263, 281 (Bankr. D.N.J. 2012) (noting courts do not have jurisdiction to modify orders, particularly when the movant is attempting to relitigate issues previously before the court); *In re Southold Dev. Corp.,* 129 B.R. 18, 21 (E.D.N.Y. 1991) (noting district court's reversal of a bankruptcy court's decision to allow the debtor to modify its confirmed plan while the creditor's appeal of the order confirming plan was pending, finding that the court had no jurisdiction to so modify the plan).

[10] The Bankruptcy Judge in further support of the releases stated, "Finally, it must not be overlooked that the Objecting Parties are receiving reasonable consideration in exchange for the release, as they are receiving more than they would in liquidation, in large part because of the contributions by HealthBridge and the Affiliated Landlords. *See In re Genesis Health Ventures, Inc.,* 266 B.R. at 608." *710 Long Ridge Rd.,* 2014 WL 886433, at *17.

appeal. However, any limitation to the breadth of the releases would have been discussed in the Court's Opinion had it been a debatable issue during the hearing." *Id.*

### A. Issues Involved in the Underlying Appeals

#### 1. 1113 Orders

The following are the issues in the underlying appeals of the 1113 Orders: (a) whether the Bankruptcy Court lacked statutory authority under Sections 1113(e) and 1113(c) to authorize modifications to the expired CBA; (b) whether the Bankruptcy Court erred in concluding that the interim modifications to the CBA were necessary to avoid irreparable damage to the Appellees; (c) whether the Appellees were capable of negotiating with the Union in good faith as required by Section 1113(b)(2) without restoring the Terms of Employment pursuant to the 10(j) Injunction; (d) whether the Section 1113 relief should have been denied because the Appellees engaged in "self-help" by unilaterally modifying the terms and conditions of employment in violation of Section 1113(f); (e) whether the Appellees were precluded by the 10(j) Injunction from re-litigating the issue of irreparable financial harm under Sections 1113; and (f) whether the Bankruptcy Court's decision was an impermissible collateral attack on the 10(j) Injunction. ECF No. 175 at 2–3.

#### 2. Claims Objection Order

In connection with the appeal of the Claims Objection Order, the following issues are presently on appeal: (a) whether the Bankruptcy Court erred in concluding that the Back Pay Claims should be reclassified as general unsecured claims; and (b) whether the Bankruptcy Court erred in expunging the Appellants' claims that are attributable to certain periods of time.

### 3.  Confirmation Order

In connection with the appeal of the Confirmation Order, the following issues are presently on appeal: (a) whether the Bankruptcy Court had subject-matter jurisdiction and the statutory authority to grant nonconsensual third-party releases that allegedly violate Section 524(e); (b) whether the Bankruptcy Court erred when it concluded that the release and injunctive provisions at issue in this case satisfy the minimum standards of fairness, necessity, and supporting evidence required for any such releases to be granted; (c) whether the Bankruptcy Court erred when it determined the Plan met the best interests of creditors test; (d) whether the Plan unfairly discriminates against the Appellants' claims without a legitimate basis for such discrimination; (e) whether the Plan violated the absolute priority rule; (f) whether the Plan was feasible; and (g) whether the Plan was filed in good faith as required by Section 1129(a)(3) of the Bankruptcy Code.

### 4.  Motion to Dismiss for Equitable Mootness

On May 19, 2014, the Appellees moved to dismiss the Appeals as equitably moot, which has been opposed by the Appellants and remains pending before this Court. *See* Civil Action No. 14-cv-01725, ECF Nos. 19, 49, 50, 58.[11]

### B.  Resumption of Administrative Law Proceedings

For the better part of 2019, the parties disputed whether Care Realty, LLC ("Care Realty"), an affiliate of the Appellees, had satisfied its obligations under the Plan and how that impacted the releases afforded to Care Realty under the Plan and the ability of the NLRB to pursue joint employer, single employer, and single integrated enterprise theories against Care

---

[11] In light of the pending Motion to Dismiss the Appeals on equitable mootness grounds, the parties have yet to brief the underlying merits of the Appeals. The parties agreed to conduct discovery in connection with the Motion to Dismiss, which commenced in July 2016 and continues to date. ECF No. 175 at 3.

Realty in the ALJ proceedings. In sum, the parties have different interpretations and opinions of the relevant Plan provisions governing Care Realty's obligations.[12] On January 31, 2019, the NLRB demanded proof that Care Realty had advanced the unused backstop funds to the Debtors, and, in turn, that Debtors' counsel has placed those funds into escrow to fund Class 6 claims. ECF No. 128-9. In a February 25, 2019 reply, counsel for the Debtors asserted that Care Realty had no obligation to contribute funds because Care Realty had not only funded the Debtors' operating shortfalls during the relevant time period but had also funded professional fees that were "allocable" to Debtors. ECF No. 128-10.

On March 28, 2019, NLRB sent the same entities a second letter noting that Debtors and Care Realty had failed to explain or document when and why the asserted professional fees were incurred and that they had failed to explain how these professional fees offset the required distribution under the terms of the Plan. ECF No. 128-11. The NLRB requested a detailed explanation of how the professional fees relieved Care Realty of its funding obligation under the Plan. By letter dated April 11, 2019, Debtors' counsel refused to provide either asserting that there was a dispute as to the interpretation of the Plan that would be addressed only after a final adjudication of the NLRB's appeal of the Confirmation Order. ECF No. 128-12.

---

[12] In November 2012, the issued a fourth amended consolidated complaint against the Debtors, Care Realty, and other related entities (Case Nos. 34-CA-070823, *et al.*), contending, among other things, that they violated the NLRA by locking employees out unlawfully and by refusing to reinstate them after a lawful strike. The Region further alleged that the Debtors and their affiliates, Care Realty included, are all jointly and severally liable as part of a "single integrated enterprise," and/or as joint employers. As subsequently calculated and described in the NLRB's proofs of claim, the Debtors and their affiliates face a backpay bill estimated at approximately $16,700,000. See NLRB Objection [Bankr. ECF No. 854] at 7; Proof of Claim [Claim No. 17]. A trial has been in progress before Administrative Law Judge Kenneth Chu for several years. The Region proceeded at trial, by agreement of the parties, by presenting the evidence on the merits and *postponing* the presentation of evidence on the single integrated enterprise/joint employer issue. The merits portion of the case was nearly complete when, on October 24, 2014, the hearing was stayed pending resolution of the Region's request for permission to present an interlocutory appeal to the Board of Judge Chu's ruling on certain privilege issues. On May 21, 2019, the Board denied the Region special permission to appeal and returned the case to Judge Chu for further proceedings.

On July 5, 2019, Counsel for the NLRB's General Counsel sent a letter to Administrative Law Judge Chu, requesting that the hearing resume since the Board had recently denied the Region's request for an interlocutory appeal. ECF No. 128-13. Counsel also notified the judge of the intent to present evidence that Care Realty is a joint employer, single employer, and single integrated enterprise with the Debtors as alleged in the unfair labor practice complaint. Counsel further notified Judge Chu that Care Realty had failed to satisfy its funding obligations under the Plan, and therefore its third-party release had been automatically vacated. Debtors' counsel, by letter on July 9, sent a responsive correspondence to Judge Chu disputing that Care Realty was in default of its funding obligations. ECF No. 128-14. The NLRB responded by letter dated August 20, 2019, describing Care Realty's failure to meet its funding obligation. ECF No. 128-16. The NLRB stated that, absent a response, the NLRB must rely on the terms of the Section 9.2 of the Plan, which led it to conclude that Care Realty was in default and that its third-party release as to the NLRB has been automatically vacated. Administrative Law Judge Chu entered an October 1, 2019 Order on Resumption of Hearing ("Resumption Order"), at which time the NLRB advised that it will proceed with pursuing the various single/joint employer theories.[13]

On October 24, 2019, Debtors filed the instant motion in an attempt to enjoin the NLRB's prosecution of the unfair labor practice complaint against Care Realty.[14] The Appellees seek emergent injunctive relief to enjoin certain proceedings before Administrative Law Judge Kenneth Chu for two reasons. First, the proceedings directly violate Orders of the Bankruptcy

---

[13] Section 9.2 of the Plan, "Releases by Holders of Claims and Equity Interests" states: Unless otherwise ordered by the Bankruptcy Court, failure by a Reorganized Debtor and/or a member of the Plan Sponsor Group [i.e., the Parent Companies, Backstop Funder, Care One, LLC, the Management Company, the Backstop Funder and the Affiliated Landlords] to make any payment as required under the Plan that remains uncured for thirty (30) days after receipt by the Debtors of written notice from any party(ies) affected by such failure, shall automatically and without order of the Bankruptcy Court result in the release granted hereunder being deemed vacated...[Bankr. ECF Nos. 989 at 145; 911-1 at 65-66].

[14] The matter was reassigned to the undersigned on July 9, 2021. ECF No. 156.

Court that confirmed the Appellees' Chapter 11 plan of reorganization and non-material modifications thereto (collectively, the "Plan"), including the Plan's injunction.[15] Second, collateral attack on the jurisdiction of this Court given the pending appeals before this Court concerning the Plan and related Orders.

The Plan contains several provisions that are relevant to the relief requested herein. Under Section 2.3(H)(b) of the Plan, the treatment of the NLRB's and Union's claims, if any, are as follows:

Upon the fixing of all Allowed Other General Unsecured Claims (which in the case of any claim filed or asserted, or that could have been filed or asserted, by Appellants and/or any employee for alleged unpaid wages, medical expenses, benefit contributions, and other costs resulting from any alleged unfair labor practice of any of the Debtors and which such claim was incurred, arose or relates to a period prior to the Petition Date (the "Backpay Claim"), shall mean the conclusion of the ALJ Proceedings and any right of appeal thereof), each holder of an Allowed Other General Unsecured Claim shall receive their *pro rata* share of the Plan Distribution Contribution Amount, which is defined to mean:

> ... such amount to be utilized for distributions under and in accordance with the Plan to holders of Allowed Other General Unsecured Claims, comprised of the sum of (a) cash in the amount of $500,000 to be advanced by Care One, LLC to the Debtors on the Effective Date and (b) upon the conclusion of the ALJ Proceedings[16] and entry of a final non-appealable order of judgment, the effectiveness of which has not been stayed, by either the United States Court of Appeals for the D.C. Circuit or the United States Court of Appeals for the Second Circuit (the "**Backpay Claim Adjudication Date**"), if any, Cash in the amount of

---

[15] A copy of the Plan is attached as Ex. 1 to the Declaration of Michael D. Sirota, Esq. dated October 24, 2019 (the "Sirota Declaration").

[16] Section 1.7 of the Plan defines "ALJ Proceedings" to mean those various proceedings pending before the National Labor Relations Board and presided over by an Administrative Law Judge, including the following matters: Case Nos. 34- CA-12715, 34-CA-12732, 34-CA-12765, 34-CA-12766, 34-CA-12768, 34-CA- 12769, 34-CA-12770, 34-CA-12771, 34-CA-070823, 34-CA-072875, 34-CA- 075226, 34-CA-08335, 34-CA-08471, 34-CA-073303, and 34-CA-080215.

$4,500,000 (the "**Backpay Claim Adjudication Date Distribution Advance**") to be advanced by Care One, LLC to the Debtors as follows:
(i) $500,000 on the Backpay Claim Adjudication Date and (ii) the balance of the Backpay Claim Adjudication Date Distribution Advance in five (5) equal annual installments, commencing on the first anniversary of the Backpay Claim Adjudication Date and payable on each anniversary date thereafter; provided, however, that the Backpay Claim Adjudication Date Distribution Advance shall be reduced on a dollar for dollar basis to the extent of the Operating Loss Backstop Distribution (as defined below) received by the Reorganized Debtors in accordance with Section 4.2 hereof.

*See* Plan, § 1.109.

Accordingly, pursuant to Section 4.2 of the Plan, for so long as each applicable Appellee shall continue to own and operate a facility, and subject to the terms of the 1113(c) Order, Care Realty shall make such funds available to the applicable Appellee to meet operating shortfalls solely to the extent identified in the projections attached to the 1113(c) Order and subject to the Backstop Funding Agreement (as defined in the Plan).

In the event that Care Realty is not required to advance the aggregate amount of funds on a consolidated basis to meet operating shortfalls in accordance with Section 4.2 of the Plan, Care Realty shall advance to the Appellees on account of the Plan Distribution Contribution Amount the aggregate amount of such unfunded Operating Loss Backstop Amount (the "Operating Loss Backstop Distribution") on the later of (i) December 31, 2018, and (ii) the date upon which the period covered by the CBA Rejection Order expires (the "Operating Loss Backstop Amount Distribution Date").

## II.   STANDARD OF REVIEW

### A. Preliminary Injunction Standard

Pursuant to Federal Bankruptcy Rule 8005, titled Stay Pending Appeal,

A motion for a stay of the judgment, order, or decree of a bankruptcy judge, for approval of a supersedeas bond, or for other relief pending appeal must ordinarily be presented to the bankruptcy judge in the first instance. Notwithstanding Rule

7062 but subject to the power of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest. A motion for such relief, or for modification or termination of relief granted by a bankruptcy judge, may be made to the district court or the bankruptcy appellate panel, but the motion shall show why the relief, modification, or termination was not obtained from the bankruptcy judge. The district court or the bankruptcy appellate panel may condition the relief it grants under this rule on the filing of a bond or other appropriate security with the bankruptcy court....

"The test for determining whether to grant a stay pending appeal under Federal Rule of Bankruptcy Procedure 8005 mirrors ... the standard for preliminary injunctions pursuant to Federal Rule of Civil Procedure 65(a)." *Madera v. Ameriquest Mortgage Co. (In re Madera)*, 2008 WL 447497, at *4 (E.D. Pa. Feb. 7, 2008); *see also Official Comm. of Equity Sec. Holders v. Finova Grp., Inc. (In re Finova Grp., Inc.)*, 2007 WL 3238764, at *1 (D. Del. Oct. 31, 2007).

Federal district courts "have original jurisdiction but not exclusive jurisdiction of all civil proceedings arising under title 11 [of the Bankruptcy Code], or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Thus, there are three types of bankruptcy jurisdiction, commonly called "arising under," "arising in," and "related to" jurisdiction. Proceedings over which a bankruptcy court can legitimately exercise related-to jurisdiction include "suits between third parties that conceivably may have an effect on the bankruptcy estate." *In re W.R. Grace & Co.*, 591 F.3d 164, 170–71 (3d Cir. 2009), *citing Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n. 5 (1995). Thus, the bankruptcy court's jurisdiction to enjoin the other proceeding must be based on the "arising under, arising in, or related to language of §§ 1334(b) and 157(a)." *In re W.R. Grace & Co.*, 591 F.3d 175, *citing Celotex*, 514 U.S. 308 n.5 (1995).

In considering whether to grant a stay pending appeal, courts consider the following four factors: (1) whether the appellant has made a strong showing of the likelihood of success on the merits; (2) will the appellant suffer irreparable injury absent a stay; (3) would a stay substantially harm other parties with an interest in the litigation; and (4) whether a stay is in the public interest. *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015); *Republic of Phil. v. Westinghouse Electric Corp.,* 949 F.2d 653, 658 (3d Cir.1991). "[T]he most critical" factors, according to the Supreme Court, *Nken v. Holder*, 556 U.S. 418, 434 (2009), are the first two: whether the stay movant has demonstrated (1) a strong showing of the likelihood of success and (2) that it will suffer irreparable harm—the latter referring to "harm that cannot be prevented or fully rectified" by a successful appeal. *In re Revel AC, Inc.,* 802 F.3d 558, 568 (3d Cir. 2015); *citing Roland Mach. Co. v. Dresser Indus.,* 749 F.2d 380, 386 (7th Cir. 1984) (Posner, J.).

For our Court, a sufficient degree of success for a strong showing exists if there is "a reasonable chance, or probability, of winning." *In re Revel AC, Inc.,* 802 F.3d 558, 568–69 (3d Cir. 2015) *citing Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 229 (3d Cir.2011) (en banc). Thus, while it "is not enough that the chance of success on the merits be 'better than negligible,'" *Id.* (citing *Nken,* 556 U.S. at 434) (citation omitted), the likelihood of winning on appeal need not be "more likely than not," *Singer Mgmt. Consultants,* 650 F.3d at 229; *see also Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.,* 559 F.2d 841, 844 (D.C. Cir. 1977) (noting that the trouble with a "strict 'probability' requirement is [] it leads to an exaggeratedly refined analysis of the merits at an early stage in the litigation").

On the second factor, the applicant must "demonstrate that irreparable injury is *likely* [not merely possible] in the absence of [a] [stay]." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) (emphasis in text). While a reference to

"likelihood" of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm we understand the Supreme Court's use of "likely" to mean more apt to occur than not. *In re Revel AC, Inc.,* 802 F.3d 569 (3d Cir. 2015); *see generally Michigan v. U.S. Army Corps of Engineers,* 667 F.3d 765, 788 (7th Cir.2011) (holding that for harm to be likely "there must be more than a mere possibility that harm will come to pass ... but the alleged harm need not be occurring or be certain before a court may grant relief") (citation omitted).

To establish irreparable harm, a stay movant "must demonstrate an injury that is neither remote nor speculative, but actual and imminent." *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969, 975 (2d Cir.1989) (internal quotation marks omitted). "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *In re Revel AC, Inc.,* 802 F.3d 571, *citing Sampson v. Murray,* 415 U.S. 61, 90, 94 S. Ct. 937, 39 L.Ed.2d 166 (1974) (internal quotation marks omitted); *see also Gotanda, supra,* at 814 (defining "irreparable injury" as "the harm [] the movant will suffer during the pendency of the litigation that cannot be prevented or fully rectified by the tribunal's final decision").

Courts have held that a unilateral violation of a bankruptcy court order, standing alone, constitutes the only harm necessary for the issuance of an injunction. *See In re Northwestern Corp.,* No. 03-12872 (JLP), 2005 WL 2847228, at *6 (Bankr. D. Del. Oct. 25, 2005) (under "settled law, where a party unilaterally violates a bankruptcy court order, that violation, standing alone, constitutes the only harm necessary for an injunction."); *In re CareMatrix Corp.,* 306 B.R. 478, 485 (Bankr. D. Del. 2004) ("[Debtor] correctly asserts that a unilateral violation of a bankruptcy court order constitutes the harm necessary for an injunction"); *In re Tippinc,* 221 B.R. 11, 27-28 (Bankr. N.D. Ala. 1998) (the court notes that "[n]umerous courts have held that

where Congress authorizes courts to issue injunctions with respect to a general statutory topic, no irreparable harm need be shown for the injunction to issue"); *In re Steffan*, 97 B.R. 741, 746 (Bankr. N.D.N.Y. 1989) (the court noted, "[s]ince injunctions in bankruptcy cases are authorized by statute, the usual equitable grounds for relief, such as irreparable damage, need not be shown"); *In re McNeil*, 128 B.R. 603, 615 (Bankr. E.D. Pa. 1991)).

"Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Nken,* 556 U.S. at 435. We weigh the likely harm to the movant (absent a stay) (factor two) against the likely irreparable harm to the stay opponent(s) if the stay is granted (factor three). This is called the balancing of harms or balancing of equities. We also take into account where the public interest lies (factor four)—in effect, how a stay decision has "consequences beyond the immediate parties." *Roland Mach.,* 749 F.2d at 388.

In this context, a number of outcomes are possible. Where the balance of harms and public interest weigh in favor of a stay and the court deems that the stay movant has made a sufficient showing of success on appeal, a stay should be granted. Where the opposite is true— *i.e.,* the merits, balance of harms, and public interest favor the stay opponent—a stay should be denied. *In re Revel AC, Inc.,* 802 F.3d 569–70 (3d Cir. 2015).

## III.   DISCUSSION

### A. Jurisdiction, Standing

As a threshold issue, Appellants contend that the District Court does not have jurisdiction to enforce another court's order and that the Plan unambiguously retained jurisdiction in the Bankruptcy Court to resolve disputes concerning its implementation and interpretation. ECF No. 131 at 26. Further, that as a general rule, the filing of an appeal divests the lower court of its

control over matters forming the basis for the appeal, *see Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 58 (1982) (per curiam); Venen v. Sweet,* 758 F.2d 117, 120 (3d Cir. 1985), but "the mere pendency of an appeal does not, in itself, disturb the finality of a judgment." *NLRB v. Cincinnati Bronze, Inc.,* 829 F.2d 585, 588 (6th Cir. 1987). "Although a district court may not alter or enlarge the scope of its judgment pending appeal, it does retain jurisdiction to enforce the judgment." *Id.; accord City of Cookeville v. Upper Cumberland Elec. Membership Corp.,* 484 F.3d 380, 394 (6th Cir. 2007); *Springs v. Ally Fin. Inc.,* 657 F. App'x 148, 151 (4th Cir. 2016); *In re Fischer,* 53 F. App'x 129, 133 (2d Cir.2002). Appellants argue that Courts accordingly distinguish between acts undertaken to enforce the judgment and acts which expand upon or alter it, the former permissible and the latter prohibited. *Cincinnati Bronze,* 829 F.2d at 588. The foregoing principles apply with the same weight in bankruptcy proceedings. While a timely filed notice of appeal divests a bankruptcy court of jurisdiction "over those aspects of the case involved in the appeal," the bankruptcy court retains jurisdiction to implement or enforce the confirmation order. *Sherman v. SEC (In re Sherman),* 491 F.3d 948, 967 (9th Cir. 2007). Appellants further argue that an appeal will divest the bankruptcy court of jurisdiction only if the bankruptcy court's determinations of the issues before it are identical to the issues pending appeal or would interfere with the appellate process. *See In re G-I Holdings, Inc.,* 568 B.R. 731, 763–64 (Bankr. D.N.J. 2017) (the court was divested of jurisdiction to enforce discharge injunction where the enforcement of the discharge injunction, as an affirmative defense to a remand motion, was pending appeal in the district court). Appellants add that here, though, the two sets of issues have nothing to do with one another.

As to standing, Appellants contend that the Debtors' motion cannot succeed because the Debtors do not allege or even hint at why litigation against a nominally separate party, Care

Realty, would injure *their* interests. ECF No. 131 at 22. Appellants cite *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006), for the proposition that to invoke the jurisdiction of a federal court, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." And that "standing is not dispensed in gross." *Id.* at 353 (citing *Lewis v. Casey,* 518 U.S. 343, 358 n.6 (1996)). ECF No. 131 at 22. Appellants also cite *Blum v. Yaretsky*, 457 U.S. 991, 999 (1982), "[A] plaintiff who has been subject to injurious conduct of one kind" does not "possess by virtue of that injury the necessary stake in litigating conduct of another kind, although similar, to which he has not been subject." ECF No. 131 at 22. Appellants further argue that it is not enough that the Debtors support confirmation of the Plan and the Plan is on appeal; that is precisely the kind of "in gross" theory that the *Blum* and *Cuno* Courts rejected. There is not a shred of evidence documenting an injury in fact to the Debtors from the conduct they seek to enjoin. *Id.*

Appellants also contend that the Debtors' motion fails because it requests unattainable relief by failing to identify any statutory or rule basis for the relief requested. *Id.* Further, to the extent that the Motion requests this Court to reissue the same injunction as previously issued by the Bankruptcy Court, such relief is plainly improper. Piling one injunction on top of another serves no judicial purpose. *Id.* at 23. Appellants advance the legal proposition that a party "seeking to enforce an injunction cannot[] obtain a *successive* injunction—i.e., an injunction ordering compliance with an existing injunction." *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 968 (11th Cir. 2012); citing *Barrientos v. Wells Fargo Bank, N.A.,* 633 F.3d 1186, 1190 (9th Cir. 2011) ("An injunction against violating an existing injunction would be superfluous, adding no judicial action and providing no additional relief.").

On the jurisdictional issue, Appellees counter that the NLRB's argument that the Motion should have been filed in the Bankruptcy Court should be rejected based on the Bankruptcy Court's previous decision. The NLRB filed the Clarification Motion to clarify the Confirmation Order in the Bankruptcy Court as it relates to the injunction provision in the Plan. The Bankruptcy Court issued an Opinion denying the Clarification Motion because it found that it did not have jurisdiction to hear the matter given that the Confirmation Order was on appeal.

As to standing, Appellees counter that *Cuno* is factually distinguishable and *Yaretsky* supports the Appellees' position. In *Cuno*, the Supreme Court held that Ohio taxpayers challenging the tax benefits awarded by the city of Toledo to DaimlerChrysler Corporation lacked standing because their claimed injury was not "concrete and particularized," but was instead "a grievance the taxpayer[s] suffer[ed] in some indefinite way in common with people generally," and because the injury was "conjectural and hypothetical." 547 U.S. at 343-44. *See* ECF No. 133 at 9.

Appellees state that the Supreme Court's 1982 decision in *Yaretsky* involved senior citizen Medicaid recipients who challenged reassignments to lower levels of care that were made without a notice or a hearing. 457 U.S. at 993. The defendants argued that the senior citizens lacked standing because they were protected by a consent decree that precluded governmental agencies from moving them to a lower level of care. *Id.* at 999. The Court disagreed, finding that the risk of being moved to a lower level of care by the facilities themselves, or the senior citizen's attending physicians, constituted a "sufficiently substantial" threat to justify Article III standing. *Id.* at 1000. *See* ECF No. 133 at 8.

Appellees further state that unlike *Cuno*, the injury to the Appellees from the NLRB's proposed conduct is concrete, particularized, and actual - - that is, the NLRB is proposing to

unilaterally eviscerate the relief afforded to the Appellees in the Bankruptcy Court; relief that came at a significant expense to the Appellees and its affiliates; and relief that is the subject of numerous, pending appeals initiated by the Appellants. *See id.* at 8–9.

Appellees further state that, dissimilar to *Cuno*, such injury is imminent given that Administrative Law Judge Chu has rescheduled trial to resume and will unnecessarily (and impermissibly) require Care Realty's active participation. Appellees further state that unlike *Cuno* and similar to *Yaretsky*, the injury to the Appellees is directly traceable to the NLRB's proposed wrongful conduct, is "sufficiently substantial" and can only be redressed by the granting of the Motion. Indeed, the NLRB concedes and acknowledges that if (i) the Plan is upheld on appeal after the completion of discovery on Appellees' motion to dismiss the appeals as equitably moot, the District Court's decision on that motion, and any subsequent ruling on the merits of this appeal, and (ii) a final determination is made after further litigation that no breach of the Plan has occurred by Care Realty, then the unfair labor practice litigation against Care Realty may become moot. *See* Objection, at 18.

As to the attainability of the relief sought, Appellees assert that they are not simply seeking a successive injunction to enforce the injunction entered by the Bankruptcy Court. Rather, the Appellees are seeking to enjoin the NLRB for its intended conduct, which violates the Plan and Confirmation Order. ECF No. 133, at 11. Appellees further assert that *Alderwoods* should not guide this Court for two main reasons. First, there are no competing bankruptcy courts and jurisdictional issues here. Second, there was no appeal of the confirmation order and discharge injunction in *Alderwoods*. *Id.* Further, Appellees contend that in contrast to *Alderwoods*, and as the Bankruptcy Court already held with respect to the Confirmation Order, the filing of a notice of appeal confers jurisdiction on the district court and divests the

bankruptcy court of its control over those aspects of the case involved in the appeal, and cite to *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). *Id.* at 12.

Appellees state that the issues that need to be addressed in the Appellees' Motion are the same issues currently on appeal – namely, the propriety, scope and effect of the releases and injunction. *Id.* at 11–12. Further, the Bankruptcy Court has *already* determined that it has been divested of jurisdiction to make judicial determinations as to these issues, which are currently on appeal before this Court, which is the proper forum for adjudicating the Motion. *Id.* at 12.

Appellees assert that pursuing Care Realty for single/joint employer claims only makes sense if the District Court reverses the Bankruptcy Court on the third-party releases and injunction or Care Realty is found to have breached the terms of the Plan. Such determinations have not been made (other than by the NLRB in its own mind) and any actions by the NLRB in the interim that violate the clear terms of the Plan should be enjoined. *Id.* at 14. Appellees add that after the appeals are exhausted, the NLRB may move before the Bankruptcy Court to re-open the bankruptcy cases and for a judicial determination as to whether Care Realty has failed to satisfy its funding obligations under the Plan. *Id.* at 17.

As to jurisdiction, the Court finds that the pending motion is properly before it. As enunciated by the Bankruptcy Court when reviewing Appellants' Clarification Motion, the general rule provides that the filing of a notice of appeal immediately divests a trial court of its control over those aspects of the case involved in the appeal and confers jurisdiction on the appellate court.[17]

As to standing, the Court agrees with Appellees that the injury from the NLRB's proposed conduct is concrete, particularized, and actual. As Appellees stated, the "NLRB is

---

[17] *See* n.10, *infra.*

proposing to unilaterally eviscerate the relief afforded to the Appellees in the Bankruptcy Court;

relief that came at a significant expense to the Appellees and its affiliates; and relief that is the

subject of numerous, pending appeals initiated by the Appellants." As enunciated by the

Bankruptcy Court, which bears repeating,

> There is no question that there is an identity of interest between the Debtors and
> Care One and Care Realty. Care One and Care Realty undoubtedly "share the
> common goal" of confirming the Amended Plan and implementing the
> transactions contemplated thereunder. *See In re Tribune Co.,* 464 B.R. 126,
> 187, *on reconsideration,* 464 B.R. 208 (Bankr. D. Del. 2011) (noting an identity
> of interest between the debtors and the settling parties where such parties
> "share[d] the common goal of confirming the [ ] Plan and implementing the [ ]
> Plan Settlement"). The Debtors also share a unity of identity with the other
> Releasees because their claims may be of such a nature that they are
> indemnifiable by the Debtors and therefore would implicate the Debtors and
> further deplete estate assets. The Objecting Parties acknowledge that actions
> against the non-debtor affiliates are consolidated with those against the Debtor
> and arise out of the same alleged conduct.

*710 Long Ridge Rd.,* 2014 WL 886433, at *15. This Court accordingly finds that Appellees have

standing.

As to the attainability of the relief sought, Appellants mischaracterize the relief sought.

Appellees are not simply seeking a successive injunction. Rather, the Appellees are seeking to

enjoin the NLRB for its intended conduct, which potentially violates the Plan and Confirmation

Order. The precise conduct for which Appellants sought review by way of its Clarification

Motion. The Bankruptcy Court's Clarification Opinion is instructive. In the Clarification

Opinion, the Bankruptcy Court declined to address the Clarification Motion finding that it did

not have jurisdiction to hear the matter given the Confirmation Order appeal. *See* Clarification

Opinion, 2014 WL 1648725, at *5. If the Bankruptcy Court could not act on the Oder while on

appeal, the determination whether to enjoin ancillary proceedings is appropriately before this

Court. The function of the divestiture rule is "to prevent interference from the lower court while

the appeal is pending and to conserve judicial resources by having only one court at a time review issues." *Sacred Heart Hosp.,* 204 B.R. at 143; *see also Whispering Pines,* 369 B.R. 752, 759 (B.A.P. 1st Cir. 2007) ("[O]nce an appeal is pending, it is imperative that a lower court not exercise jurisdiction over those issues which, although not themselves expressly on appeal, nevertheless so impact the appeal so as to interfere with or effectively circumvent the appeal process."). Thus, a court cannot take action that will alter or modify its prior order while that order is pending on appeal. *See In re G–I Holdings, Inc.,* 472 B.R. 263, 281 (Bankr. D.N.J. 2012) (noting courts do not have jurisdiction to modify orders, particularly when the movant is attempting to relitigate issues previously before the court); *In re Southold Dev. Corp.,* 129 B.R. 18, 21 (E.D.N.Y. 1991) (noting district court's reversal of a bankruptcy court's decision to allow the debtor to modify its confirmed plan while the creditor's appeal of the order confirming plan was pending, finding that the court had no jurisdiction to so modify the plan).

One conclusion seems clear, parties are not usually left to their own devices to determine whether a breach of a court order has occurred. Unless and until a determination by the issuing court or a reviewing court, the parties are not free to draw their own conclusions and act accordingly. That would defeat the very basis for judicial review. Moreover, a subordinate court is equally in no position without some degree of express authority to take similar action in the absence of a determination by the issuing or reviewing court.

The Court finds that the relief sought is attainable and will review whether preliminary injunctive relief is appropriate.

### A. Preliminary Injunction

#### 1. Likelihood of Success on the Merits

Appellees seek an order that the NLRB be preliminarily restrained and enjoined pending final adjudication of this matter from investigating, pursuing, or otherwise prosecuting the Released Claims against the Releasees.

Appellees contend that Pursuant to Section 9.2 of the Plan, the "Releasees," which include, among others, Care One, LLC, Care Realty, HealthBridge Management, LLC, and the affiliated landlords, were released from all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whatsoever (collectively, "Released Claims"), by holders of claims, such as Appellants. This unequivocally includes Appellants' claims based upon a joint employer, single employer, or single integrated enterprise theory of action. Appellees further contend that pursuant to Section 9.4 of the Plan, on and after the confirmation date, any holder of a claim is enjoined, pursuant to section 105 of the Bankruptcy Code, from proceeding against any of the Releasees, for the collection of all or any portion of their claim or pursuing any claim that is released pursuant to the Plan, said injunction to remain in effect only for so long as such applicable Debtor complies with the terms of the Plan. Section 9.4 of the Plan further provided that any violation of the Plan that remains uncured for thirty (30) days after receipt by the Debtors of written notice from any party affected by such violation, shall automatically and without order of the Bankruptcy Court result in the dissolution of the injunction granted hereunder as to said affected party. *See* Plan, § 9.4.

Moreover, Section 9.4 of the Plan provides that, subject to all provisions of Article IX of the Plan, including the releases, neither Section 9.4 of the Plan nor any Confirmation Order shall operate as an injunction with respect to, or otherwise limit or enjoin, the NLRB's rights to fix a claim against any Releasee in the ALJ Proceedings. *See* Plan, § 9.4.

Appellants counter that Debtors' motion specifically seeks an order "restraining and enjoining" the NLRB "from investigating, pursuing, or otherwise prosecuting the Released Claims against the Releasees," continuing such injunction "pending final disposition of this matter." [ECF No. 128.] ECF No. 131 at 21. They cite no jurisdictional basis for their request, nor any statute that would purportedly authorize such an injunction. Meanwhile, the Debtors do *not* request either that the Plan's existing injunction be clarified or that it be enforced through contempt proceedings. ECF No. 131 at 21–22.

Appellants further assert that the Debtors' motion cannot succeed because the Debtors do not allege why litigation against a nominally separate party, Care Realty, would injure their interests. It is not enough that the Debtors that the Debtors support confirmation of the Plan and the Plan is on appeal; that is precisely the kind of "in gross" theory that the *Blum* and *Cuno* Courts rejected. There is not a shred of evidence documenting an injury in fact to the Debtors from the conduct they seek to enjoin. *Id.* at 22.

Appellants contend that to the extent that the Motion requests this Court to reissue the same injunction as previously issued by the Bankruptcy Court, such relief is plainly improper. Piling one injunction on top of another serves no judicial purpose. Appellants posit that courts have found that a party "seeking to enforce an injunction cannot[] obtain a *successive* injunction—i.e., an injunction ordering compliance with an existing injunction." *Alderwoods Grp., Inc. v. Garcia*, 682 F.3d 958, 968 (11th Cir. 2012); citing *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1190 (9th Cir. 2011) ("An injunction against violating an existing injunction would be superfluous, adding no judicial action and providing no additional relief."). *Id.* at 21-22.

Appellants contend that NLRB's appeal is not about Plan compliance; it is about whether the Plan was lawfully entered in the first place. Win or lose on that issue, it has no bearing on the question of whether Care Realty has complied with its funding obligations set forth in the Plan. The existence of one legal proceeding does not give a court *carte blanche* to issue procedural orders governing any and every dispute between the parties to that proceeding. *Id. at* 22. "It would be juridical nonsense for this Court to issue a 'preliminary' injunction that terminates not when the merits of the instant dispute are resolved, but when the merits of *some other* dispute are resolved."

The Bankruptcy Court's Confirmation Order while on appeal, nevertheless, remains in effect. Appellants filed a motion to clarify "the effect of the Confirmation Order's third-party release on the NLRB's case against Care One Realty, LLC, Care One LLC, and Healthbridge Management, LLC (collectively the 'Affiliates')." *710 Long Ridge Rd.,* 2014 WL 886433, at *1. Appellants themselves appealed the Confirmation Order and filed for clarification of its terms. As to whether Appellants should be allowed to proceed as if the Order were no longer in effect or as if they were successful on a motion left unresolved by the Bankruptcy Court, they are not likely to succeed. As appropriately stated by the Bankruptcy Judge, "the requested 'clarification' deals directly with the breadth and scope of the injunction and release provisions in the Plan which are subject to attack by the NLRB and Union in their appeal. Attempts to relitigate issues while they are on appeal are not appropriate." *710 Long Ridge Rd.,* 2014 WL 886433, at *3.

This Court goes further and states that attempts to litigate issues in another forum which are subject to attack by the NLRB and Union in their appeal are equally not appropriate. Appellees meet their burden of "a reasonable chance, or probability, of winning." *In re Revel*

*AC, Inc.,* 802 F.3d 558, 568–69 (3d Cir. 2015) (citing *Singer Mgmt. Consultants, Inc. v. Milgram,* 650 F.3d 223, 229 (3d Cir. 2011) (en banc)).

It is worth repeating the Bankruptcy Court's holding in the Opinion on Confirmation Order, "Whether third-party releases are permissible plan provisions is governed by substantive bankruptcy law and is often litigated. Referring to third-party releases, the Bankruptcy Court for the District of New Jersey has noted that "such injunctions and releases are customary and ordinary in large Chapter 11 cases." *Id.* at *12 (citing *In re Am. Family Enters.,* 256 B.R. at 406.)[18] District courts have approved releases which provided for a permanent injunction against the pursuit of creditor's claims against funding parties and other released third parties, *see In re Am. Family Enters.,* 256 B.R. at 407, particularly, where as in the instant matter, "the injunction plays an important part in the debtors' reorganization plan." *See also In re Metromedia Fiber Network, Inc.,* 416 F.3d 136, 141; *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285, 293 (2d Cir.1992)).

The Court finds that Appellees have demonstrated a likelihood of success on the merits on the basis that: (i) the Releasees, including Care Realty, have been released from the Released Claims, including claims based on joint employer, single employer, and single integrated enterprise theories, pursuant to the Plan; and (ii) the NLRB lacks the ability to unilaterally act to determine that Care Realty is in violation of the Plan given the ongoing and well-documented dispute concerning Care Realty's obligations under the Plan.

### 2. Irreparable Injury

Appellees contend that their application for injunctive relief should be granted to protect and preserve the Plan and Confirmation Order and to uphold the integrity of the Bankruptcy Court. ECF No. 128-18 at 33. They assert that a unilateral violation of a bankruptcy court order

---

[18] *See* n.6 *infra.*

constitutes the harm necessary for an injunction. *Id.* at 32. Appellees further contend that in contrast, there is no harm in prohibiting Appellants from pursuing the Released Claims against Care Realty before Judge Chu. Whether Care Realty is or is not a single or joint employer does not impact Appellants' recovery under the Plan whatsoever. At the conclusion of the ALJ Proceedings, the NLRB shall be entitled to receive its *pro rata* share of the Plan Distribution Contribution Amount on account of the Backpay Claims, irrespective of Care Realty's joint liability, if any. *Id.* at 33.

Appellants counter that "Debtors contend solely that the NLRB's supposed violation of the Bankruptcy Court's orders constitutes irreparable harm. But—exemplifying the Debtors' confusion as to whether they are seeking contempt or a new injunction—the supposedly-violated court order is *itself the injunctive provisions of the Plan*, and we have already shown that courts will not issue successive injunctions. Nor could—or do—the Debtors rely upon litigation costs to support an irreparable-harm claim." ECF No. 131 at 23.

The grounds stated for a finding of likelihood of success, namely "the requested 'clarification' deals directly with the breadth and scope of the injunction and release provisions in the Plan which are subject to attack by the NLRB and Union in their appeal. Attempts to relitigate issues while they are on appeal are not appropriate," *710 Long Ridge Rd.,* 2014 WL 886433, at *3, equally serves as a basis for finding irreparable harm. The potential that litigation against the Releasees in the ALJ proceedings is a violation of the Confirmation Order and that such proceedings could result in inconsistencies with its terms is very likely. "While a reference to 'likelihood' of success on the merits has been interpreted by courts to cover the generic range of outcomes, for irreparable harm we understand the Supreme Court's use of "likely" to mean more apt to occur than not. *In re Revel AC, Inc.,* 802 F.3d 569; *see generally Michigan v. U.S.*

*Army Corps of Engineers*, 667 F.3d 765, 788 (7th Cir.2011) (holding that for harm to be likely "there must be more than a mere possibility that harm will come to pass ... but the alleged harm need not be occurring or be certain before a court may grant relief") (citation omitted).

Appellants asserted in the underlying bankruptcy proceedings that it was beyond the Bankruptcy Court's jurisdiction to resolve NLRB claims against non-debtors because "preventing claimants from pursuing their claims is equivalent to issuing a final adjudication of the merits of such claims." *710 Long Ridge Rd.,* 2014 WL 886433, at *11. The Bankruptcy Judge modified the Plan accordingly to address the NLRB's rights under the NLRA. *See, infra*, at 4.   As previously referenced, the Bankruptcy Judge commenting on the filing of the Clarification Motion stated,

> The NLRB's concern with a latent ambiguity in the Order belies what actually occurred with respect to that Order. A form of order was filed prior to the commencement of the two-day confirmation hearing and no objection was ever raised to the form of order by the NLRB. After this Court's Opinion, the Debtors were directed to prepare a proposed amended form of order, consistent with the Opinion requiring the removal of certain individuals from the parties' granted releases and an injunction under the Confirmation Plan, and again no objection to the provisions of the Confirmation Order, now claimed to be ambiguous, were raised by the NLRB or Union prior to its entry.

*710 Long Ridge Rd.*, 2014 WL 1648725, at *2.

Further litigation of the ALJ proceedings certainly presents a likely risk of mooting provisions of the Confirmation Order, which provides support for a finding of irreparable harm. *See Williams v. Republic (In re Cujas)*, 376 B.R. 480, 487 (Bankr. E.D.Pa. 2007). Further support can be found in the Bankruptcy Judge's comment that Appellants had not objected to the Confirmation Order terms prior to entry, making it likely that continuation of the ALJ proceeding may be violative thereof.

The pending appeal of the Confirmation Order prevents the Bankruptcy Court from reviewing the merits of the Confirmation Order. This necessitates entry by this Court of an "appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest" to address the likelihood of irreparable harm. Federal Bankruptcy Rule 8005.

### 3.  Harm to the Opposing Party

Appellants state that the public interest overwhelmingly supports continuation of the NLRB's case against Care Realty. The NLRB, and the hundreds of employees who could potentially recover millions of dollars in additional backpay over and above what the Plan provides by showing that Care Realty is liable for unfair labor practices, have a palpable interest in having the unfair labor practice case heard in a timely manner. ECF No. 131 at 24.

Appellants acknowledged that "if (i) the Plan is upheld on appeal after the completion of discovery on Debtors' motion to dismiss this appeal as equitably moot, this Court's decision on that motion, and any subsequent ruling on the merits of this appeal, and (ii) a final determination is made after further litigation that no breach of the Plan has occurred, then unfair labor practice litigation against Care Realty may become moot." *Id.*

Appellees counter that there is no harm in prohibiting Appellants from pursuing the Released Claims against Care Realty before Judge Chu. Indeed, whether Care Realty is or is not a single or joint employer does not impact Appellants' recovery under the Plan whatsoever. Appellees assert that at the conclusion of the ALJ Proceedings, the NLRB shall be entitled to receive its pro rata share of the Plan Distribution Contribution Amount on account of the Backpay Claims, irrespective of Care Realty's joint liability, if any. ECF No. 128-18 at 33.

The Court agrees with Appellees and finds that the balance of relative harms weighs in favor of the Appellees. The Court finds support for this finding in the Bankruptcy Court's

determination in connection with the entry of the Confirmation Order that, "in order to preserve the viability of the Debtors, third parties are contributing significant dollars to fund the potential for a Back Pay Claim award. These funds will be available to satisfy such a claim against the Debtors without the NLRB ever having to prove its case that any of the third parties is liable as a single and/or joint employer." *710 Long Ridge Rd.,* 2014 WL 886433, at \*13.

### 4. Public Interest

Appellees assert that the public interest is served by preserving the integrity of the bankruptcy process from collateral attack post- confirmation. *See In re Northwestern Corp.*, 2005 WL 2847228, at \*6 ("[i]t is in the public interest to preserve the integrity of the bankruptcy process from collateral attack post-confirmation."); *see also Henkel v. Lickman (In re Lickman)*, 286 B.R. 821, 829 (Bankr. M.D. Fla. 2002) (bankruptcy court recognized that a state court's collateral attack on bankruptcy jurisdiction "would, if unchecked, result in irreparable harm to the plaintiff and to the bankruptcy policy of the United States."); *In re Chiron Equities, LLC*, 552 B.R. 674, 699 (Bankr. S.D. Tex. 2016) (finding that an action in another tribunal violates "the long-standing judicial policy prohibiting collateral attacks" on bankruptcy jurisdiction, "thereby undercutting the orderly process of law, which results in irreparable harm"). ECF No. 128-18 at 34.

As asserted in connection with the balance of harm, Appellants state that the public interest overwhelmingly supports continuation of the NLRB's case against Care Realty. The NLRB, and the hundreds of employees who could potentially recover millions of dollars in additional backpay over and above what the Plan provides by showing that Care Realty is liable for unfair labor practices, have a palpable interest in having the unfair labor practice case heard in a timely manner. ECF No. 131 at 24.

The Court concludes that to the extent Appellees have established a likelihood of success, irreparable harm, and a balance of the relative harms in their favor, the Court finds that a public interest exists to enjoin the administrative proceedings.

**B.  Sanctions**

The Appellees submit sanctions are appropriate here under 28 U.S.C. § 1927 and should be awarded pursuant to the Court's inherent authority under same. Appellees cite as authority, "Counsel's liability for excessive costs," 28 U.S.C. § 1927, which provides, in applicable part:

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927. ECF No. 128-18 at 35.

Appellees further assert that upon a showing of bad faith, it is appropriate and warranted for this Court to award sanctions in Appellees' favor. *See Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009) (quoting *LaSalle Nat'l Bank v.First Connecticut Holding Group, L.L.C. XXIII*, 287 F.3d 279, 289 (3d Cir. 2002) (citations omitted)). ECF No. 128-18 at 35. Further, that the NLRB has engaged in precisely the type of unreasonable and vexatious litigation that warrants sanctions to reimburse Appellees for the costs, expenses, and attorneys' fees reasonably incurred by the Appellees in connection with this application.

Appellants counter that there are three reasons why any attempt to reconstrue this Motion as one to hold the NLRB in contempt would fail. First, the Bankruptcy Court, not this Court, must hear any such motion. Second, the Plan does not clearly enjoin what the NLRB wishes to do. Finally, the very terms of the Plan create substantial doubt as to whether the Plan's injunction is actually in effect—doubt which is fatal to any allegation of contempt.

A court may impose civil contempt sanctions where there is clear and convincing evidence that (1) a valid order of the court existed; (2) the defendant had knowledge of the order; and (3) the defendant disobeyed the order. *See Robin Woods, Inc. v. Woods,* 28 F.3d 396, 399 (3d Cir. 1994); *In re Meyers,* 344 B.R. 61, 64–65 (Bankr. E.D. Pa. 2006); *In re Brown,* 481 B.R. 351, 357 (Bankr. W.D. Pa.2012). "Persons may not be placed at risk of contempt unless they have been given specific notice of the norm to which they must pattern their conduct." *Inmates of Allegheny Cty. Jail v. Wecht,* 754 F.2d 120, 129 (3d Cir. 1985). For that reason, "civil contempt will lie only if the putative contemnor has violated an order that is clear and unambiguous." *Project B.A.S.I.C. v. Kemp,* 947 F.2d 11, 16 (1st Cir.1991) (citing, among other cases, *Wecht*). "Related to this last requirement is the principle that any ambiguities or uncertainties in such a court order must be read in a light favorable to the person charged with contempt." *Id.* (citing *NBA Props., Inc. v. Gold,* 895 F.2d 30, 32 (1st Cir. 1990)).

The Court disagrees with all three reasons advanced by Appellants as to why the application for sanctions should fail but nevertheless denies without prejudice this portion of Appellees request for relief. The Court does not find the "clear and unambiguous" requirement as to the Confirmation Order's terms due to the Bankruptcy's Court determination that it lacked jurisdiction to hear the Clarification Motion.

## IV. CONCLUSION

For the foregoing reasons, Appellees' motion for preliminary injunctive relief (1) restraining and enjoining Appellant from investigating, pursuing, or otherwise prosecuting certain claims pending final disposition in this matter and the underlying appeals is **GRANTED**;

(2) for sanctions, attorneys' fees and costs is **DENIED without prejudice**. An appropriate Order accompanies this Opinion.

DATED: October 25, 2022

_____
**JULIEN XAVIER NEALS**
United States District Judge